UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOHN B. HARWOOD<br><br>VS.<br><br>QT 5, INC.; STEVEN REDER in his capacity as President OF QT 5, INC.; TIMOTHY OWENS in his capacity as CEO of QT 5, INC.; and NORMAN KUNIN as Chief Financial Officer/Treasurer of QT 5, INC. | ) | CA NO.: 04 59T |

**PLAINTIFF'S MEMORANDUM REGARDING RELATEDNESS, PURPOSEFUL AVAILMENT, AND REASONABLENESS**

Now comes the Plaintiff in the above-entitled matter and pursuant to the February 8, 2005 order of this court (Document #22) submits as follows:

## 1. GENERAL JURISDICTION[1]

The facts at issue in this case do not involve an unincorporated association as in Donatelli v. National Hockey League, 893 F.2d 459, 466 (1st Cir., 1990), nor does it involve a parent/wholly owned subsidiary as was present in United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080 (1st Cir., 1992). This action is against the very corporation QT-5, Inc.

[1] Plaintiff does contend that general jurisdiction exists in addition to specific jurisdiction.



24

Plaintiff takes the position that after the national launch and rollout of its NicoWater product, announced on or about May 28, 2003 (Exhibit A), Defendant should reasonably have anticipated being haled into court in all fifty (50) states regarding all marketing and retailing of NicoWater. Its corporate intention was openly disclosed to include the entire nation! (Exhibit A).

However, a more conservative general jurisdiction analysis is satisfied by the Defendant's open and blatant intent, announced on or about May 30, 2003 (see Exhibit B), to initiate its national rollout here in our forum state, and by it's specific intent to make NicoWater available at "all Brooks Pharmacy[2] locations throughout the New England area" Id., and it's stated intent to use Rhode Island companies, Northeast Beverage Corp., Rhode Island Distributing, Providence Beverage and C & C Distributing for "distribution to multiple northeastern states." Id.

Therefore, out of all fifty (50) states Defendant reasonably should anticipate defending suit, Rhode Island is one of three that it absolutely intended to create a substantial and continuous relationship. The other states, Delaware, is its state of incorporation, and California is the home of its headquarters in Westlake Village. The Defendant, through its Vice President of Marketing, Randall VyDuna, has described their efforts with Brooks as a "marketing push" Id., thus conveying an intent to be proactive and aggressive with its product in our forum state.

As much as every Plaintiff would like to provide an exhaustive compilation of every fact conceivably supporting

---

[2] At all material times, Brooks Pharmacy was a Rhode Island corporation, corporate identification number 88997. At all material times, Brooks Pharmacy Inc., Rhode Island corporate ID# 122908, was a Delaware corporation, maintains its corporate headquarters at 50 Service Avenue, Warwick, RI.

general jurisdiction, most can only provide those they are privy to, and those they subsequently learn of through the marketplace of commerce. They can not provide those not within their possession, but must rely upon their honest understanding. To that end, Plaintiff attaches hereto and makes incorporated by reference as if set forth in full herein as Exhibit C, "Plaintiff, John Harwood's, Supplemental Affidavit"[3].

It should be noted that as far as the Plaintiff was aware, "there was no legislation in Maine when Mr. Powley and Mr. Burns first met or communicated with [Plaintiff]" Exhibit C, ¶4. It is believed that the announcement regarding the adverse legislation in Maine was not available until June 6, 2003 (Exhibit D)[4]. The communications with Plaintiff in Rhode Island probably occurred as early as the spring of 2003, specifically "April or May" Id., Exhibit C. Moreover, the news on the Maine issue did not break until June 6, 2003. (see Exhibit E).

By June 6, 2003, both Mr. Powley and Mr. Burns had already entered our jurisdiction several times to meet with Mr. David Lowman[5]; Defendant established purposeful and meaningful relationships[6] in Rhode Island; and according to an announcement published on July 8, 2003, made by Vice President of Sales, David Powley, Defendant "began shipping its product as early as May, 2003, (see Exhibit E). More likely than not, since Brooks

---

[3] Inclusion of Exhibit C herein is intended to also satisfy the requirement, contained in this court's order, Document #22, at p2 ("Plaintiff is directed to submit an affidavit..."), and all topics counsel believed were required to be respectively addressed, without need of making a separate, duplicitous, filing.

[4] See also Exhibit C, ¶3 ("The next day, on June 6, 2003, I received a call...")

[5] See generally the attendance at events referenced as "Exhibit 2", attached to David Lowman's January 15, 2005 affidavit.

[6] See generally Exhibit B ("Northeast Beverage Corp., Rhode Island Distributing, Providence Beverage and C & C Distributing")

Pharmacy was the "first to market"[7] NicoWater, the Defendant probably first ever shipped its product to Rhode Island and probably to other New England states, as was its intent supra.

## 2. SPECIFIC JURISDICTION[8]

Should this court find that the facts in the record do not support a finding of general jurisdiction, Plaintiff submits that by virtue of the foregoing, pertaining to general jurisdiction, more than adequate minimum contacts exist which simultaneously satisfy the requirements of purposeful availment and reasonableness.

Notwithstanding the above, if restricted to the facts immediately preceding the June 9, 2003 memorialization[9], relatedness, purposeful availment, and reasonableness are supported by those facts specified in Plaintiff's Affidavit (Exhibit C), and in a "Second Supplemental Affidavit of Witness, David A. Lowman" Exhibit F.

Probably on more than one occasion, the Defendant's officers intentionally physically entered Rhode Island to meet with the Plaintiff[10] and have dinner[11]. The Defendant's intentions to have a marketing presence in Rhode Island were already established by virtue of their relationship with Mr. Jim Burns, David Lowman, and David Powley and the relationships established with certain Rhode Island companies supra.

---

[7] see Exhibit B.

[8] Plaintiff does contend that general jurisdiction exists in addition to specific jurisdiction.

[9] Exhibit 3 to David Lowman's January 15, 2005 affidavit.

[10] Exhibit F, ¶5

[11] Exhibit C ("I remember having dinner...")

Though this court may be concerned about the requirement of relatedness[12], relatedness is more than adequately filled by the magnitude of the specific compensation Plaintiff anticipated. Specifically, $150,000.00 seems expensive compensation for less than one month's work in Maine.

Plaintiff had refused to provide future services in Maine or Europe without so much as a firm deal in writing[13]. It is reasonable to assume that the majority of that compensation would have been in exchange for Plaintiff's past performance, and promise to provide future performance. The only past marketing performance that existed for Plaintiff was their successful distribution arrangements with Rhode Island companies.

The actual contract was injected into this state via the Internet through e-mail initiated by the Defendant's president, and delivered to David A. Lowman. Acceptance by the Plaintiff was provided by the Plaintiff's actions of leaving the state and performing service out of this state. Therefore, the contract specifically related to adequacy of the enticement to get the Plaintiff to perform valuable services from beyond our borders.

**CONCLUSION:**

Succinctly stated, an offer to pay someone to travel out of the state, even for the briefest duration, necessarily is a contract that specifically relates to this state. To live and work in Rhode Island is to love Rhode Island. Most Rhode Island domiciliaries consider it a major imposition and deprivation to travel beyond our proud borders. Those more honorable would not dare submit to a request to labor beyond our fine borders for a

[12] Document #22, p. 3

[13] see Exhibit C, ¶3.

meager pay, but would exact compensation consistent with the perceived loss or deprivation.

**WHEREFORE,** Plaintiff respectfully request final judgment, finally enter.

Plaintiff,
By counsel

Joseph-Anthony DiMaio, Esq.
Attorney #3910
McKinnon & Harwood
1168 Newport Avenue
Pawtucket, RI 02861
(401) 723-9655

February 22, 2005

**CERTIFICATION**

I hereby certify that the defendant is in default for failure to appear and has not appeared and that therefore no service need be made on the parties in default for failure to appear and that the within pleadings do not assert new or additional claims for relief, (*USCS Fed Rules Civ. Proc R. 5*) said claims arising out of the same identical conduct, transaction, and occurrence set forth in the original pleading, and that there is an exact identity of the entity sued herein (*USCS Fed. Rules Civ. Proc R. 15(c)(3)*).

# EXHIBIT A

**Financial News**

Enter symbol(s) [ ] Basic Get Symbol Lookup

$7 Trades ONLINE MARKET ORDERS Scottrade | HARRISdirect get 20 FREE EQUITY TRADES | Waterhouse FREE Trades

**Related Quote**




QTFV.OB 0.30 0.00 News

View Detailed Quote
Delayed 20 mins
Quote data provided by Reuters

**Press Release** Source: QT 5, Inc.

# QT 5, Inc. Announces National Launch and Rollout of NICOWater(TM)

Wednesday May 28, 4:01 pm ET

## Multi-Million Dollar Development Program Culminates in Breakthrough Homeopathic Product

WESTLAKE VILLAGE, Calif., May 28 /PRNewswire-FirstCall/ -- QT 5, Inc. (OTC Bulletin Board: QTFV - News), manufacturer and marketers of NICOWater(TM), the breakthrough Homeopathic nicotinum (nicotine) product designed to relieve symptoms of tobacco cravings, announced today the national launch and roll-out NICOWater(TM). NICOWater(TM), the result of a multi-million dollar investment program over a year in development, is now being rolled out nationally.

ADVERTISEMENT




"This is a very exciting threshold moment in QT 5's history as this revolutionary Homeopathic product -- over which the management, employees and our partners have labored intensively for a year -- now comes to market," stated Steven Reder, QT 5's President. "Our breakthrough product -- specifically targeting the extraordinarily attractive $200 billion market for tobacco and tobacco products -- has been engineered to satisfy smokers' cravings when they can't smoke or shouldn't smoke, an increasingly common dilemma for smokers in today's restrictive public and private environments." Mr. Reder went on to say, "QT 5 is populated by a dynamic management team which has defined a compelling opportunity to capitalize on a market populated by over 25% of all Americans. Our burgeoning company, which sustained significant losses in the development and manufacturing of this state-of-the-art Homeopathic product, will now begin to reap the rewards of its labor by addressing the needs of these millions of American smokers."

About QT 5, Inc.

QT 5, Inc. is a Delaware corporation formed in April 1999 as a manufacturer, distributor and marketer of Bio-Med testing and Homeopathic products. QT 5, Inc. is continuing its clinical research and development of future products for lifestyle enhancements. QT 5, Inc. is headquartered in Westlake Village, California. For more information please visit: www.qt5inc.com. NICOWater(TM) is sold under the FDA's Compliance Policy Guide Conditions Under Which Homeopathic Drugs May Be Marketed. For additional information on QT 5, Inc. contact Bernadette Cusack, Vice President -- Investor Relations, Trilogy Capital Partners, bernadette@trilogy-capital.com.

**Related News Stories**

- QT 5, Inc. Commences NICOWater(TM) Shipments - PR Newswire (Tue Jul 8)
- QT 5 INC FILES (8-K) Disclosing Other Events and Financial Statements & Exhibits - EDGAR Online (Wed Jun 18)
- VentureNet Capital Group, Inc. Announced Today That SevenFold, Inc. Is the West Coast Producer for NICO International Inc. - PrimeZone Media Network (Tue Jun 10)
- QT 5, Inc. Provides Detail to Guidance for Fiscal 2004 - PR Newswire (Tue Jun 3)

More...

- By industry: Biotech, Health care, Tobacco

**Top Stories**

- Formal Probe Opened Into Tenet's Billing - Reuters (9:17 am)
- Before the Bell: Tenet Healthcare Drops - Reuters (9:15 am)
- Stocks Set to Stumble: Earnings in Focus - Reuters (9:02 am)
- Kraft Shakes Up N.American Management - Reuters (8:36 am)

More...

- Most-emailed articles
- Most-viewed articles

**Finance Spotlight**

Cautionary Statement

This release contains forward-looking statements that involve risks and uncertainties, such as statements about our plans, objectives, expectations, assumptions or future events. These statements involve estimates, assumptions, known and unknown risks, uncertainties and performances, or achievements expressed or implied by the forward-looking statement. Actual future results and trends may differ materially from those made in or suggested by any forward-looking statements due to a variety of factors, including, for example, our ability to compete with other products in our space; the risk of unfavorable federal regulation; and the fact that our status as a development state company makes our future unclear. Consequently you should not place undue reliance on these forward-looking statements. We discuss many of these and other risks and uncertainties in greater detail under the section entitled, "Risk Factors That May Affect Future Results" in Item 1 of the Company's Current Report on Form 8-K as filed with SEC on January 24, 2003 (the "Merger Form 8-K").


- **Research Reports** Expert insight at great prices
- **Credit Reports** Find out your credit score instantly
- **MarketTracker** Live streaming quotes for $9.95/mo


---

Source: QT 5, Inc.

Email this story - Set a News Alert

ADVERTISEMENT

**Special Offers**

- Refinance NOW and GET CASH! Lower Your Rate!
- +236% Since 10/02 Trading $5-$10 Stocks
- Get a FREE Mortgage REFINANCE QUOTE - click here!
- Home Equity Loans: Today's Rates, Free Quote
- Rent all the DVDs you want - No Late Fees!
- Buy Ink Cartridges at MyInks.com - Save 80%
- Win cash just for filling out surveys
- Save up to $500* in commissions with CyberTrader.
- Refinance. Close in as little as 30 days
- Get a FREE REFINANCE QUOTE - click here!

Search News

Copyright © 2003 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Ad Feedback
Copyright © 2003 PR Newswire. All rights reserved. Republication or redistribution of PRNewswire content is expressly prohibited without the prior written consent of PRNewswire. PRNewswire shall not be liable for any errors or delays in the content, or for any actions taken in reliance thereon.

# EXHIBIT B

YAHOO! FINANCE Search - Finance Home - Yahoo! - Help

PR Newswire

Welcome, ready2now [Sign Out]

Money Manager - My Yahoo! View - Customize

## Financial News

Enter symbol(s) Basic Get Symbol Lookup

$7 Online Trades Online Market Orders

FREE Waterhouse

HARRISdirect get $100 CREDIT

QTFV.OB



Press Release

# Brooks Pharmacy Chain is First to Introduce NICOWater(TM)

Friday May 30, 7:02 am ET

## Major Regional Chain of 330 Outlets Commencing Multi-Channel Advertising Campaign

WESTLAKE VILLAGE, Calif., May 30 /PRNewswire-FirstCall/ -- QT 5, Inc. (OTC Bulletin Board: QTFV - News), manufacturer and marketers of NICOWater(TM), the breakthrough Homeopathic nicotinum (nicotine) product designed to relieve symptoms of tobacco cravings, announced that NICOWater(TM) is now available at all Brooks Pharmacy locations throughout the New England area. The company also announced that NICOWater(TM) has been shipped to Northeast Beverage Corp., Rhode Island Distributing, Providence Beverage and C & C Distributing for distribution to multiple northeastern states.

ADVERTISEMENT




Steven Reder, President of QT 5 stated, "We believe that NICOWater(TM) is a breakthrough product whose time has come. We believe NICOWater(TM) taps directly into the $200 billion tobacco and tobacco products market. And, most importantly, we believe that NICOWater (TM) is a revolutionary Homeopathic product that will have broad commercial acceptance through all consumer channels -- from national pharmacy, convenience and grocery chains to point of use locations such as restaurants and airlines."

Mr. Reder continued, "Our dynamic management team has worked long and hard to get to this point. We chose Brooks for our regional introduction because of their strong demographics and leading edge approach to providing their customers with the most comprehensive selection of pharmacy, healthcare and lifestyle products."

In addition to high visibility in Brooks' direct and in-store advertising vehicles, the NICOWater (TM) campaign includes newspaper and radio advertising targeted specifically to Brooks Pharmacy communities announcing immediate availability. QT 5 Vice President of Marketing, Randall VyDuna, notes, "Although we intend to provide all of our resellers with strong promotional support, as 'first to market' Brooks will certainly be rewarded and benefit greatly from our introductory marketing push. As we increase the range of our marketing efforts, the message will remain constant. Whether at home with children, on an airplane or on the 30th floor, a smoker can sip a 16.9 fl. oz. bottle of NICOWater(TM) and relieve symptoms of tobacco cravings without subjecting others, especially children, to the harmful effects of second-hand smoke."

**Related News Stories**

- QT 5, Inc. Commences NICOWater(TM) Shipments - PR Newswire (Tue Jul 8)
- QT 5 INC FILES (8-K) Disclosing Other Events and Financial Statements & Exhibits - EDGAR Online (Wed Jun 18)
- VentureNet Capital Group, Inc. Announced Today That SevenFold, Inc. Is the West Coast Producer for NICO International Inc. - PrimeZone Media Network (Tue Jun 10)
- QT 5, Inc. Provides Detail to Guidance for Fiscal 2004 - PR Newswire (Tue Jun 3)

More...

- By Industry: Advertising, Medical/pharmaceutical, Tobacco

**Top Stories**

- Formal Probe Opened Into Tenet's Billing - Reuters (9:17 am)
- Before the Bell: Tenet Healthcare Drops - Reuters (9:15 am)
- Stocks Set to Stumble: Earnings in Focus - Reuters (9:02 am)
- Kraft Shakes Up N.American Management - Reuters (8:36 am)

More...

- Most-emailed articles
- Most-viewed articles

**Finance Spotlight**

- **Research Reports**
  Expert insight at great prices
- **Credit Reports**
  Find out your credit score instantly
- **MarketTracker**
  Live streaming quotes for $9.95/mo

Conference Call and Webcast

Within the context of QT 5 management's commitment to maximum transparency, QT 5 will be hosting a webcast and conference call on Monday, June 2, 2003 at 11 am Eastern to discuss the successful launch and rollout of NICOWater, as well as all financial aspects of the company. Steven Reder, President of QT 5, and other members of the executive management team will be available to answer questions and discuss the current state of the Company. Investors may e-mail questions in advance of the call to A.J. Cervantes, President of Trilogy Capital Partners, at aj@trilogy-capital.com. Participants in the conference can call 800.406.5356 domestically, or by calling 913.981.5572 from an international location. Investors should indicate they are participating in the "QT 5 Guidance Call." To access the webcast, investors who would like to pre-register for the webcast can log on to www.qt5inc.com after 6 pm Eastern today.

The webcast will also be distributed over the Shareholder.com Investor Distribution Network to both institutional and individual investors including OpenCompany.info, a corporate disclosure network providing information on over 6,000 public companies to the investment community and to participating portals and websites

About NICOWater(TM)

NICOWater(TM) is designed to relieve the symptoms of tobacco cravings as is indicated in all product packaging and usage instructions. QT 5, Inc. is quite specific about who our market is: adult smokers who suffer from the symptoms of tobacco cravings and find themselves in situations or environments where smoking is prohibited or discouraged. The United States has led the world in identifying the dangers of second hand smoke. As a result, smoking restrictions are widespread and increasing rapidly. While these steps have doubtlessly eliminated many of the second-hand exposure and greatly improved numerous building environments, there remain over 40 million active smokers who must obey these growing restrictions and succumb to these inconveniences simply to relieve the symptoms of their tobacco cravings. NICOWater(TM) is a Homeopathic drug product that is sold under the FDA's Compliance Policy Guide Conditions under which Homeopathic Drugs may be Marketed. For more information, visit www.nicowater.com.

About QT 5, Inc.

QT 5, Inc. is a Delaware corporation formed in April 1999 as a manufacturer, distributor and marketer of Bio-Med testing and Homeopathic products. QT 5, Inc. is continuing its clinical research and development of future products for lifestyle enhancements. QT 5, Inc. is headquartered in Westlake Village, California. For more information please visit: www.qt5inc.com. NICOWater(TM) is a Homeopathic drug product that is sold under the FDA's Compliance Policy Guide Conditions under which Homeopathic Drugs may be Marketed. For additional information on QT 5, Inc. contact Bernadette Cusack, Vice President - Investor Relations, Trilogy Capital Partners, bernadette@trilogy-capital.com.

Cautionary Statement

This release contains forward-looking statements that involve risks and uncertainties, such as statements about our plans, objectives, expectations, assumptions or future events. These statements involve estimates, assumptions, known and unknown risks, uncertainties and performances, or achievements expressed or implied by the forward-looking statement. Actual future results and trends may differ materially from those made in or suggested by any forward-looking statements due to a variety of factors, including, for example, our ability to compete with other products in our space; the risk of unfavorable federal regulation; and the fact that our status as a development state company makes our future unclear. Consequently you should not place undue reliance on these forward-looking statements. We discuss many of these and other risks and uncertainties in greater detail under the section entitled, "Risk Factors That May Affect Future Results" in Item 1 of the Company's Current Report on Form 8-K as filed with SEC on January 24, 2003 (the "Merger Form 8-K").

Contact

Bernadette Cusack, Vice President
Trilogy Capital Partners, Inc.
800.330.6540
bernadette@trilogy-capital.com

Source: QT 5, Inc.

Email this story - Set a News Alert

ADVERTISEMENT

Special Offers

- 7 Stocks to Buy Now!
- +236% Since 10/02 Trading $5-$10 Stocks
- Click here for Auto Loans as low as 3.79%
- Buying a home? Get approved for a loan first
- Win cash just for filling out surveys
- Save up to $500* in commissions with CyberTrader.
- Rent all the DVDs you want - No Late Fees!
- Get a FREE Mortgage REFINANCE QUOTE - click here!
- Under $5 Must-Own Stocks - FREE Report!
- Save up to $400 on all notebooks.

Search News

Copyright © 2003 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Ad Feedback
Copyright © 2003 PR Newswire. All rights reserved. Republication or redistribution of PRNewswire content is expressly prohibited without the prior written consent of PRNewswire. PRNewswire shall not be liable for any errors or delays in the content, or for any actions taken in reliance thereon.

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| JOHN B. HARWOOD<br><br>VS.<br><br>QT 5, INC.; STEVEN REDER in his capacity as President OF QT 5, INC.; TIMOTHY OWENS in his capacity as CEO of QT 5, INC.; and NORMAN KUNIN as Chief Financial Officer/Treasurer of QT 5, INC. | ) | CA NO.: 04 59T |

**PLAINTIFF, JOHN B. HARWOOD'S**
**SUPPLEMENTAL AFFIDAVIT**

I, JOHN B. HARWOOD, being duly sworn, upon oath deposes and says:

1. I have personal knowledge of the facts set forth in this Affidavit;

2. The circumstances surrounding my entering into an agreement wth QT-5, Inc are during the year 2003, I met with employees of the Defendants to promote and plan the introduction of the Defendant's products in Rhode Island, other states, and Europe. Meetings took place in Rhode Island. In fact, the Defendant's product, Nico Water, was sold on a continuous basis in the State of Rhode Island. The Defendant attempted to sell its product in the State of Maine and was stymied from doing so. The Defendant hired me to go to the State of Maine for a fee as mentioned in the complaint and David Lowman's affidavit(s). The agreement was sent to me in Rhode Island when thereafter I proceeded to Maine to perform the services agreed to between the Defendant and myself.

3. My prior negotiations where my services were discussed began in June of 2003 at dinner at the Capital Grille, in

Providence Rhode Island on June 5, 2003. We discussed my past and future involvement in marketing Nico Water in Rhode Island, other states, and Europe. No specific fee, or assignment was discussed then. It was more getting to know each other but with the prospect of firming up our relationship. David Powley, Jim Burns, and David Lowman were at that dinner. A copy of David Powley's business card is Attached to this affidavit. Next, on June 6, 2003, I received a call from QT-5, Inc. regarding an issue in the State of Maine. Before I agreed to do anything more or go anywhere, especially anything out of state, I needed a specific deal placed in writing. Once we orally agreed, Steve Reder and Tim Owens, both officers for QT-5, Inc., called me to go over the situation. Steven Reder, president, followed-up on our deal with e-mail to David Lowman on June 9, 2003, referencing an agreement and referencing the terms. I went to Maine the day after it was in writting, June 10, 2003, to give what help I could to defeat and prevent passage of proposed legislation in that legislative session regarding the Nico Water product.

4. I first came to have contact with QT-5 through their agents or employees in the Spring of 2003. They solicited me to help promote their product in the State of Rhode Island, and other states, and in Europe. The communications are too numerous to recall because my personal friend whom I saw frequently, David Lowman, became their agent sometime in the beginning of that year. I remember all David talked about the whole beginning of the year, 2003, was this new product, Nico Water, and QT-5, Inc. I think they first contacted me as early as April or May. Around that time I remember having dinner with David Powley, and Jim Burns, both from QT-5, Inc. and from out of state. To the best of my recollection, there was no legislation in Maine when Mr. Powley and Mr. Burns first met or communicated with me. I remember there were numerous phone calls from their agents or employees in April and May of 2003. I wasn't entirely

certain whether David Powley was with the company because he may also have had a relationship with a New York company known as Nirvana Spring. But when I met him for dinner, he gave me a QT-5, Inc. business card and sent me a letter referring to QT-5, Inc. as "our" company. When I eventually spoke to the officers of QT-5, Inc., Mr. Timothy Owens and Steven Reder, they indicated he was with their company.

5. The future consequences contemplated by our first contact were that we would try to sell the Defendant's products in the Brooks Drugstores in Rhode Island, which we did. We also contemplated selling the product in other states such as Maine and those contemplating smoking bans in public places.

6. Our actual course of dealing was developing a strategy to contact the purchasing personel of the Brooks Drugstores as well as other business outlets to sell the Defendant's product, which we did.

7. The nature of that course of dealing was to sell the Defendant's product, Nico Water, in as many states as possible.

8. All in total, there were aproximately 12-15 meetings with the Defendant's employees and/or agents in Rhode Island, which include David Lowman and David Powley;and 8-10 phone calls with the Defendants, Steven Reder and Timothy Ownes.

John B. Harwood

John B. Harwood

STATE OF RHODE ISLAND )
COUNTY OF PROVIDENCE )

Subscribed and sworn to before me this 17th day of Feb, 2005.

Kim Benyon

Notary Public

NICO
International, Inc.
A wholly-owned subsidiary of QT 5, Inc.

*David Powley*
DIRECTOR OF SALES

914-245-7956
dpowley@nicowater.net

5655 Lindero Canyon Rd., Suite 120 - Westlake Village, CA 91362

# EXHIBIT D

factiva

**Distributor halting sale of nicotine water targeted by bill**

458 words
6 June 2003
08:41
Associated Press Newswires
English
Copyright 2003. The Associated Press. All Rights Reserved.

AUGUSTA, Maine (AP) - As a legislator moved to outlaw the sale of bottled water laced with nicotine, Maine distributors of the product said they are removing the product from store shelves.

A bill introduced Thursday by Sen. John Martin, D-Eagle Lake, took aim at Nico Water, which is sold in half-liter bottles containing 4 mg of nicotine, an amount equal in punch to two cigarettes.

That same day, Brooks Pharmacy, based in Warwick, R.I., said it would no longer be selling Nico Water.

"There's just too many questions being asked. We don't need to create any confusion in our stores. We have very simple stores with nice products and we don't want any controversy," said Bill Welsh, the drug chain's executive director.

Martin said that when the Legislature is moving to restrict smoking, the threat posed by Nico Water is too great to ignore.

But California-based Quick Test Five Inc., the company that manufactures Nico Water, said the product is only intended to relieve the cravings experienced by tobacco users. Company president Steve Reder says new laws that ban smoking from bars and other establishments underscore the need for such a nicotine substitute.

Martin said his interest in the issue was prompted by a newspaper ad.

"It was in the sports section and said, 'Attention Adult Smokers: Quench Your Cravings! When You Cannot Or Should Not Smoke, Grab A Bottle of Nico Water,'" Martin said. "I've never seen anything so ridiculous in my life."

Martin said the threat Nico Water poses to the public in general and to children in particular is too great to ignore. The senator said that after the Food and Drug Administration ruled that QT 5 could not market its product as a dietary supplement, the company changed it strategy to market it as a homeopathic supplement.

"Nico Water is just the latest attempt by the tobacco industry to keep people hooked on smoking and tobacco products," Martin said. "The fact is Nico Water has no positive health benefits. Moreover Nico Water actually has the effect of keeping the nicotine-addiction craving high for thousands of Maine people and millions of Americans."

Reder challenged Martin's dismissal of the product.

"Maine now has extended its ban on smoking," Reder said. "The Legislature can tell people not to smoke around others and to get away from the secondhand smoke, which we all agree with, but you can't tell a smoker to stop. So you go ahead and allow them to function without going crazy. The biggest thing is to give them satisfaction on something. This is a better alternative than anything out in the marketplace."

Rush

Document aprs000020030606dz6600m83

 © 2003 Dow Jones Reuters Business Interactive LLC (trading as Factiva). All rights reserved.

# EXHIBIT E

YAHOO! FINANCE Search - Finance Home - Yahoo! - Help

PR Newswire

Welcome, ready2now [Sign Out]

Money Manager - My Yahoo! View - Customize

Financial News

Enter symbol(s) Basic Get Symbol Lookup

Press Release

Source: QT 5, Inc.

# QT 5, Inc. Commences NICOWater(TM) Shipments

Tuesday July 8, 7:00 am ET

WESTLAKE VILLAGE, Calif., July 8 /PRNewswire-FirstCall/ -- QT 5, Inc. (OTC Bulletin Board: QTFV - News) manufacturer and marketers of NICOWater(TM), the breakthrough Homeopathic Nicotinum (nicotine) product designed to relieve the symptoms of tobacco cravings, today announced that it commenced shipment of NICOWater(TM) in May. According to Vice President of Sales, David Powley, "The majority of shipments went to independent distributors and we are extremely pleased with the way NICOWater(TM) has been received by both the consumers and our resellers."

QT 5, Inc. President, Steve Reder added, "We have been very diligent in planning this New Product Introduction and all indications are that we are right on track. As we ramp up our production and broaden the scope of our NICOWater(TM) distribution networks, we continue to find a very high level of enthusiasm. We have already received some impressive opening orders from a number of national chain stores and look forward to announcing increased consumer availability in the near future."

About Qt 5

QT 5, Inc. is a Delaware corporation formed in April 1999 as a manufacturer, distributor and marketer of Bio-Med testing and Homeopathic products. QT 5, Inc. is continuing its clinical research and development of future products for lifestyle enhancements. QT 5, Inc. is headquartered in Westlake Village, California. For more information please visit: www.qt5inc.com. NICOWater(TM) is a Homeopathic Drug product that is sold under the FDA's Compliance Policy Guide Conditions Under Which Homeopathic Drugs May Be Marketed.

Cautionary Statement

This release contains forward-looking statements that involve risks and uncertainties, such as statements about our plans, objectives, expectations, assumptions or future events. These statements involve estimates, assumptions, known and unknown risks, uncertainties and performances, or achievements expressed or implied by the forward-looking statement. Actual future results and trends may differ materially from those made in or suggested by any forward-looking statements due to a variety of factors, including, for example, our ability to compete with other products in our space; the risk of unfavorable federal regulation; and the fact that our status as a development sate company makes our future unclear. Consequently you should not place undue reliance on these forward-looking statements. We discuss many of these and other risks and uncertainties in greater detail under the section entitled, "Risk Factors That May Affect Future Results" in Item 1 of the Company's Current Report on Form 8-K as filed with SEC on January 24, 2003 (the "Merger Form 8-K").

---

Source: QT 5, Inc.

Email this story - Set a News Alert

Search News

Related Quote




QTFV.OB 0.30 0.00 News

View Detailed Quote

Delayed 20 mins

Quote data provided by Reuters

Related News Stories

- QT 5 INC FILES (8-K) Disclosing Other Events and Financial Statements & Exhibits - EDGAR Online (Wed Jun 18)
- VentureNet Capital Group, Inc. Announced Today That SevenFold, Inc. Is the West Coast Producer for NICO International Inc. - PrimeZone Media Network (Tue Jun 10)
- QT 5, Inc. Provides Detail to Guidance for Fiscal 2004 - PR Newswire (Tue Jun 3)
- QT 5, Inc. Provides Revenue and Earnings Guidance for Fiscal 2004 - PR Newswire (Mon Jun 2)

More...

- By Industry: Health care, Medical/pharmaceutical

Top Stories

- Formal Probe Opened Into Tenet's Billing - Reuters (9:17 am)
- Before the Bell: Tenet Healthcare Drops - Reuters (9:15 am)
- Stocks Set to Stumble: Earnings in Focus - Reuters (9:02 am)
- Kraft Shakes Up N.American Management - Reuters (8:36 am)

More...

- Most-emailed articles
- Most-viewed articles

Copyright © 2003 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Ad Feedback
Copyright © 2003 PR Newswire. All rights reserved. Republication or redistribution of PRNewswire content is expressly prohibited without the prior written consent of PRNewswire. PRNewswire shall not be liable for any errors or delays in the content, or for any actions taken in reliance thereon.

# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| JOHN B. HARWOOD<br><br>VS.<br><br>QT 5, INC.; STEVEN REDER in his capacity as President OF QT 5, INC.; TIMOTHY OWENS in his capacity as CEO of QT 5, INC.; and NORMAN KUNIN as Chief Financial Officer/Treasurer of QT 5, INC. | ) | CA NO.: 04 59T |

**SECOND SUPPLEMENTAL AFFIDAVIT OF WITNESS, DAVID A. LOWMAN**

I, DAVID A. LOWMAN, being duly sworn, upon oath deposes and says:

1. I have personal knowledge of the facts set forth in this Affidavit;

2. I reside at 940 Quaker Lane, #917, Warwick Rhode Island, 02818, and may be reached at (401) 862-3273.

3. My attendance at events regarding QT-5, Inc. was summarized in Exhibit 2, attached to my January 15, 2005 affidavit. That summary does not reflect the many conversations I had with John Harwood in early 2003, regarding marketing Nico Water for QT-5, Inc. in Rhode Island.

4. During the week of June 1, 2003, I spoke with David Powley, Director of Sales for QT-5, Inc., and Steven Reder, President of QT-5, Inc., regarding expanding business into Europe. I suggested the Plaintiff could help in Europe.

5. It was at that point that I suggested they formalize their relationship with John Harwood; based on my personal relationship with him, I believed Mr. Harwood would be an asset. He had already helped a lot in Rhode Island, and I think they may have already met him on another occasion.

6. After I suggested the Plaintiff, David Powley asked whether he could come and meet with him. I then called the Plaintiff, asked whether he would be interested in meeting with the Defendants for dinner. I made dinner arrangements for the Defendant to meet the Plaintiff at the Capital Grille, on June 5, 2003, located in Providence, Rhode Island. Present at dinner on behalf of QT-5, Inc. was David Powley and Jim Burns.

7. The next day, on June 6, 2003, I received a call from David Powley advising that they just learned of legislation introduced in Maine to ban the sale of their product, Nico Water. David Powley conferenced into our telephone call both Mr. Steven Reder and Timothy Owens. The Defendants discussed compensating the Plaintiff for consulting services and advise which would assist in defeating the Maine proposed legislation. The Defendants, though their president, Steven Reder, subsequently put their offer in writing by sending me e-mail on June 9, 2003. They offered to pay the Plaintiff a total of $150,000.00 consisting of a $10,000.00 check, $40,000.00 in company warrants, and upon successful completion, $100,000.00.

8. The Plaintiff then traveled to Maine on June 10, 2003, and performed certain other consulting tasks and services which resulted in successful completion by virtue of the demise of the proposed Maine legislation at the end of Maine's June 2003 legislative session approximately one-week later.

David A. Lowman

STATE OF RHODE ISLAND )
COUNTY OF PROVIDENCE )

Subscribed and sworn to before me this 15th day of February, 2005.

Notary Public

Joseph Anthony DiMaio, Esq.
Notary Public of Rhode Island
My Commission Expires 7/29/05

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOHN B. HARWOOD )
)
VS. ) CA NO.: 04 59T
)
QT 5, INC.; STEVEN REDER in his capacity as President OF QT 5, INC.; TIMOTHY OWENS in his capacity as CEO of QT 5, INC.; and NORMAN KUNIN as Chief Financial Officer/Treasurer of QT 5, INC. )

FILED FEB 01 2005 U.S. DISTRICT COURT DISTRICT OF RHODE ISLAND

RECEIVED FEB 23 2005 DAVID L. MARTIN, U.S. MAGISTRATE JUDGE U.S. DISTRICT COURT, DISTRICT OF RHODE ISLAND

MOTION TO AMEND CAPTION

Now comes the Plaintiff in the above-entitled matter and respectfully moves this Honorable Court Amend the Caption in the above-entitled matter to properly reflect the present name of the single Defendant in interest, "**ADDISION-DAVIS DIAGNOSTICS, INC.**, alias MEDTEST, alias John Doe". In support of said motion, the Plaintiff states that the Defendant, formerly known as **QT-5, Inc.** changed its name on or about November 18, 2004. Moreover, each individual identified was identified in his or her capacity as an officer of said QT-5, Inc., therefore liability rests only upon the corporate entity.

Attached hereto and makes incorporated by reference as if set forth in full herein Exhibit A, is a specimen caption which the Plaintiff submits for this court's approval.

In further support of this motion, Plaintiff attaches hereto and makes incorporated by reference as if set forth in full herein Plaintiff's Memorandum in Support of his Motion to Amend Caption.

Referred to U.S.M.J. Martin
☐ for findings & recommendations
☑ for determination
☐ ______
Ernest C. Torres, Chief Judge
Date: 4/22/05

Plaintiff,
By counsel

Joseph Anthony DiMaio, Esq.
Attorney #3910
McKinnon & Harwood
1168 Newport Avenue
Pawtucket, RI 02861
(401) 723-9655

23

February 1, 2005

No objection having been filed, the motion is GRANTED. David L. Martin 2-23-05
David L. Martin, USMJ